IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:23-cr-40004 |
| | ) | |
| vs. | ) | DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS |
| | ) | |
| DEREK WAYNE RONDEAU, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Derek Wayne Rondeau, by his attorney, Assistant Federal Public Defender Amanda Kippley, submits this Memorandum in support of his Motion to Suppress.

## STATEMENT OF FACTS

### A. Report by S.R.

On June 15, 2022, at approximately 5:59 PM, C.B. called Lincoln County Dispatch to report that his friend, S.R., texted him about an hour prior and said that her boss raped her. C.B. reported that S.R. told him that her boss took her clothes off and took photos of her. C.B. reported that the guy's name was Derek, that his shop was in Tea, and provided the address to the shop. Officers from the Tea Police Department were dispatched to Rondeau's Recycling to respond.

Upon arrival, Tea Police Officer Brian Crosby met with S.R. and interviewed her in his patrol vehicle. S.R. stated that she was 15 years old. She reported that she had been raped and sexually assaulted by her boss, Derek. S.R. stated that she began working for Derek the day prior, June 14, 2022, after seeing a message on Snapchat in which he was asking for help at his business. She reported that on

June 14, 2022, during and after working at the business, Derek sent her inappropriate Snapchat messages, but that she no longer had the messages on her phone. She stated that she returned to work at Rondeau's Recycling on June 15, 2022, and that Derek assigned her to travel with him to Iowa to drop a car off at a junkyard. She reported that on the way to the junkyard, Derek turned off the highway onto gravel roads and eventually stopped and exited the truck. S.R. reported that Derek had two guns in the car. She reported that Derek sexually assaulted her by touching her vaginal area with his hand and by having sexual intercourse with her, that he took photographs of her nude, and that he videotaped her with his phone and made her "play with herself" as he did so. S.R. reported that they got back in the car, proceeded to the junkyard, and then returned to Derek's shop in Tea. During the ride, S.R. texted her friend C.B, who later reported the incident to law enforcement.

Officer Crosby contacted another officer on scene, Officer Johnson, to make contact with Derek and seize his cell phone.[1] He then contacted Sgt Edward Colshan with Lincoln County Sheriff's Office and briefed him on the report.[2] Sgt Colshan called back a few minutes later to advise that he would be sending detectives out to the scene and told Officer Crosby to detain Derek.[3] Officer Crosby then instructed Officer Johnson to detain Derek.[4] By the time that Sgt Colshan arrived on scene at approximately 07:02:12 p.m., Derek was detained and was being

[1] This communication is recorded on Officer Crosby's vehicle camera at approximately 14:58.
[2] This communication is recorded on Officer Crosby's vehicle camera at approximately 17:40.
[3] This communication is recorded on Officer Crosby's vehicle camera at approximately 24:56.
[4] This communication is recorded on Officer Crosby's vehicle camera at approximately 28:04.

held in a law enforcement vehicle. At some point, Derek was placed in handcuffs. Officers had discussions with Derek about his phone. At approximately 08:29:12 p.m., body camera video indicates that officers discussed that they had not advised Rondeau of his *Miranda* rights. At approximately 08:30:40 PM, Detective Leah Stroschein began interviewing Rondeau, who was being held in the back of a patrol vehicle.[5] Detective Stroschein immediately asked Rondeau about the location of his cell phone and to provide a description of it. Rondeau responded that he left the phone at Post Metal Recycling in Rock Valley, Iowa and that he had an iPhone 13 in a case. Detective Stroschein confronted him about his statements and said that she had some information that he had it with him when he came back from Iowa. She asked him further questions about the vehicle he was driving and its location. At approximately 4 minutes 10 seconds into the interview, Detective Stroschein read Rondeau his *Miranda* rights. He waived his rights and agreed to speak with her.

On June 15, 2022, Detective Brock Nelson applied to the Second Judicial Circuit in Lincoln County for a search warrant to search Rondeau, his shop, and his vehicle. Judge Rachel Rasmussen signed a search warrant authorizing a search of:

- The physical person of Derek Wayne Rondeau, DOB [ ]
- The building at 46953 Monty St., Tea, SD 57064, Suite 1, north end of the building, known to operate as Rondeau's Recycling, and
- A green Dodge pickup, no license plates, an unreadable VIN tag, presently secured on the property at 46953 Monty St., Tea, SD.

[5] Detective Stroschein's interview of Rondeau is audio recorded.

For the following property:

- The person of the named Defendant to include but not limited to the collection of body fluids, buccal swabs for purposes of DNA, swabs of fingers, and penile swabs; and seizure of clothing and undergarments; and an iPhone in black case.

Law enforcement executed the warrant. They located a black iPhone under a refrigerator in the shop. Law enforcement noted that the phone appeared to be damaged, specifically that it appeared to have been heated.

On June 16, 2022, Detective Nelson contacted DCI Special Agent Matthew Glenn to request assistance in identifying an email or iCloud account for Rondeau. Based on their investigation, Detective Nelson sent a preservation request to Apple Inc. for the iCloud account associated with derek_rond@yahoo.com. On June 17, 2022, at approximately 5:31 p.m., Detective Nelson received confirmation that the account had been preserved.

**B. Report by T.C.**

On June 17, 2022, at approximately 4:45 p.m., T.C. came to the Turner County Sherriff's Office to report that she had been raped. Deputy Robert Kirvin met with T.C., T.C.'s friend A.A., and Deputy Zick. T.C. reported that she had been raped by Rondeau on June 9, 2022. She stated that she was at the public pool in Parker, South Dakota that afternoon and that she noticed a maroon F250 in the parking lot. She stated that Rondeau told her to get in the vehicle. She reported that she initially said no but that she saw two guns in the vehicle. She told law

enforcement that she got into the truck and that Derek drove her to a wooded area. She stated that he told her to get out of the vehicle and squat down to pee. She stated that he then proceeded to sexually assault her. T.C. stated that Rondeau drove her back to Parker. Turner County Sheriff's Office conducted additional investigation over the following days and months.

### C. Searches of Rondeau's Apple iCloud

On June 21, 2022, Detective Nelson applied for a search warrant in Lincoln County for Rondeau's iCloud account associated with derek_rond@yahoo.com. The search warrant affidavit detailed only the allegations made by S.R. in support of probable cause. A judge in the Second Judicial Circuit, Lincoln County, granted a search warrant to search Apple Inc. for the iCloud account of derek_rond@yahoo.com. (Exhibit 1). The warrant ordered Apple, Inc. to deliver a long list of information, in digital form, "dating from the creation or opening of the Apple iCloud account listed above to the time that this warrant is executed."

Reports indicate that Detective Nelson served the search warrant on Apple Inc. electronically at 10:52 a.m. on June 21, 2022. The Certification of Apple Inc. Custodian of Records declaration indicates that Apple Inc. produced the responsive data on July 29, 2022. On October 4, 2022, Detective Nelson filed a Return of Search Warrant and Verified Inventory with the court indicating that the property taken was a "Digital file containing the contents of the Apple iCloud account of derek_rond@yahoo.com." It is unclear whether law enforcement had conducted a review of the data prior to the return being filed.

Law enforcement reports indicate that on November 16, 2022, Detective Nelson attempted to download the contents of the iCloud account associated with derek_rond@yahoo.com that had been provided by Apple Inc. However, the link had expired. Detective Nelson requested that Apple reauthenticate the link to make the files accessible. Once Apple reauthenticated the link, Detective Nelson downloaded the files to a secure server at the Lincoln County Sherriff's Office. The files were decrypted and saved for review. The files were also copied to an external hard drive for DCI Special Agent Jackson Brown to review. Detective Nelson delivered the hard drive to SA Brown on November 17, 2022.

Law enforcement reports indicate that on November 15, 2022, Detective Leah Stroschein was in contact with Turner County Sherriff's Deputy Kirvin and learned of T.C.'s report. On November 16, 2022, Detective Stroschein received Turner County's report from Deputy Kirvin. Detective Stroschein learned that the alleged sexual assault of T.C. occurred on June 9, 2022 around 1330 hours at the Plucker Waterfowl Production area in Turner County, South Dakota. Detective Stroschein reviewed photos and videos from Rondeau's iCloud account and located three videos of a female urinating outdoors in what appeared to be a wooded area on that particular date and around that time. Detective Stroschein conducted follow-up investigation with T.C. who identified herself in the videos.

On November 18, 2022, Homeland Security Investigations (HSI) received a request for assistance from the Internet Crimes Against Children (ICAC) Task Force to assist in this investigation. The data from Rondeau's iCloud was provided

to Special Agent David Hohn with HSI. On January 2, 2023, Special Agent Hohn examined the data "pursuant to a state search warrant." He located images and videos he classified as "age difficult pornography" and also located three videos of T.C., previously identified by Detective Stroschein.

## ARGUMENT AND AUTHORITIES

### A. The warrant for Rondeau's iCloud was fatally lacking in particularity.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly* describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. (emphasis added). The Fourth Amendment requires that search warrants particularly describe the place to be searched and the items to be seized. *Kentucky v. King*, 563 U.S. 452, 459 (2011) ("[A] warrant may not be issued unless probable cause is properly established, and the scope of the authorized search is set out with particularity."). The particularity requirement "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927). Additionally, "[a] particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (internal citations omitted).

The warrant in this case authorized law enforcement to search and seize essentially all the data related to Rondeau's iCloud account. It ordered Apple Inc. to deliver to law enforcement all records "dating from the creation or opening of the Apple iCloud account" to the "time that this warrant is executed." It ordered search and seizure of, among other things, all subscriber information; all mail logs; all email content; all detailed billing records for any purchases made with the Apple ID; a complete log file of all activity relating to the Apple ID; all iCloud IOS device backup information; all other iCloud information relating to Contacts, Calendars, Bookmarks, Safari, Photos, etc.; all privacy preferences; all applications; all location history data; all the Apple devices associated with the Apple ID. However, the warrant did not contain even a single statement regarding what evidence of a crime that law enforcement was authorized to search for once they obtained the data.[6]

"The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh*, 540 U.S. at 557 (citations omitted). Here, the search warrant signed by the judge did not include, by incorporation or expressly, the language contained in Detective Nelson's affidavit. This warrant mentioned the affidavit just one time—in the averment of probable cause. However, such a statement does not amount to incorporation of a supporting affidavit. *Groh*, 540 U.S. at 554-55.

---

[6] Courts around the country have begun to grapple with particularity as it relates to various kinds of digital data. *See United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (expressing concern about warrants for Facebook data that lacked any limits); *see also State v. Padula*, 2022 R.I. Super. LEXIS 82 (finding that a warrant for defendant's entire email account lacked sufficient particularity and suppressing evidence).

As a result of the fatal lack of particularity in the search warrant, law enforcement conducted what amounted to general exploratory searches through Rondeau's iCloud data for evidence of other crimes. The affidavit supporting the search warrant was based solely on S.R.'s allegations. However, it appears that none of the searches were tailored to look for evidence solely of S.R.'s allegations. The first documented search of the data occurred approximately five months after the warrant was issued. On November 16, 2022, Detective Stroschein went through the iCloud data and appears to have specifically searched for evidence of the allegation made by T.C. that she had learned of just the day prior. No separate search warrant was obtained by Turner County law enforcement or Lincoln County law enforcement to search the iCloud data for evidence related to T.C.'s separate allegations. On January 2, 2023, Special Agent Hohn with Homeland Security conducted yet another search of Rondeau's iCloud data pursuant to the state search warrant. However, yet again, because the warrant lacked any particularity, it appears that Special Agent Hohn conducted yet another general search through the data for evidence of other potential crimes. This is exactly the type of general searching that the framers sought to avoid in adopting the Fourth Amendment.

**B. The warrant far exceeded any probable cause for the search.**

Even if the court finds sufficient particularity, the warrant was much broader than probable cause merited. A warrant must be supported by probable cause. U.S. Const. amend IV. "Probable cause exists when, considering all the circumstances, there is a fair probability that evidence of a crime will be found in a particular

place." *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (cleaned up). This probable cause requirement applies to "every item" sought in the warrant and affidavit. *Groh*, 540 U.S. at 560. Like particularity, the reason that warrants can issue only for "the specific . . . things for which there is probable cause to search" is to make sure "the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

The affidavit described a specific alleged sexual assault of S.R. that was reported to have taken place on June 15, 2022. S.R. reported she began working for Rondeau the previous day, June 14, 2022. Thus, at most, the affidavit supported a finding of probable cause to search Rondeau's iCloud for specified data related to the allegation of sexual assault from June 14 and June 15, 2022. Thus, law enforcement should have sought a search warrant particularly describing—and asking to search and seize—just that data for evidence of the crime reported by S.R. They did not. There was not probable cause to search and seize data from prior to June 14, 2022, and certainly not from the iCloud's creation date years earlier. There was not probable cause to search and seize the lengthy list of data that ended up in the warrant, none of which was tied in either the affidavit or the warrant itself to potential evidence of a crime.

**C. Exclusion of evidence is the appropriate remedy.**

The warrant in this case was facially invalid. As such, the evidence should be suppressed and the good faith exception should not apply. *See Groh*, 540 U.S. at 563-

65 (noting that "[g]iven the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid."). In determining whether to apply the good-faith exception, the court examines whether law enforcement acted in an "objectively reasonable manner" in relying on the warrant. *United States v. Martin*, 833 F.2d 752, 755 (8th Cir. 1987). Suppression is still appropriate in cases when a warrant "is facially deficient—i.e., it fails to state with particularity the place to be searched or the thing to be seized— [because] then it can not reasonably be relied upon." *Martin*, 833 F.2d at 755 (citations omitted). In this case, it was unreasonable for a reasonably well-trained officer to rely on the warrant. Because the warrant was facially deficient, suppression is the appropriate remedy.

**D. Rondeau's Statements**

Rondeau's statements to officers on scene and to Detective Stroschein prior to being advised of *Miranda* were obtained in violation of his Fifth Amendment rights. The Fifth Amendment states that no person "shall be compelled in case to be a witness against himself." *Miranda* warnings—informing a person of his right to remain silent and right to an attorney—must be given when an individual is in custody and subject to government interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "[F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained." *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).

Rondeau was in custody at the time officers were questioning him about the whereabouts of his cellular phone. "The ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "The "'only relevant inquiry' in considering that question is how a reasonable person in [Rondeau's] position would have understood his situation," considering the totality of the circumstances that confronted him at the time of questioning. *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (8th Cir. 1984).

Rondeau was under arrest at the time officers were asking him about his phone and when Detective Stroschein initially asked him about his phone. A reasonable person in his position would have believed he was under arrest based on the presence of multiple law enforcement officers, his continued detention in a law enforcement vehicle, and ultimately, his placement in handcuffs. Detective Stroschein believed him to be under arrest because just prior to advising him of his *Miranda* rights she specifically noted these circumstances. Because officers questioned Rondeau about the crime while he was in custody and without providing him *Miranda* warnings, his responses to that questioning should be suppressed.

## CONCLUSION

For the reasons set forth above, Defendant respectfully moves the Court for an order suppressing the above-described statements and evidence.

Dated this 2nd day of July 2024.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:
*/s/ Amanda D. Kippley*

Amanda D. Kippley
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
101 S. Main Ave., Suite 400
Sioux Falls SD, 57104
Phone: (605) 330-4489; Fax: (605) 330-4499
Filinguser_SDND@fd.org