UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEREK WAYNE RONDEAU,<br><br>Defendant. | 4:23-CR-40004-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND GRANTING IN PART AND DENYING IN PART RONDEAU'S MOTION TO SUPPRESS |

Defendant, Derek Wayne Rondeau, is charged with four counts of production of child pornography, three counts of kidnapping, one count of transportation of a minor, five counts of sex trafficking of a child by force, fraud, or coercion, two counts of obstruction, one count of destruction of evidence, one count of retaliation, one count of possession of child pornography, and one count of enticement of a minor using the internet. Docket 82. Rondeau filed a motion to suppress all evidence obtained from law enforcement searches of (1) the iCloud account associated with his Apple ID, telephone number, email address, and DSID number; (2) his blue and green iPhones; (3) his Dropbox account; and (4) his Snapchat account. Docket 84 at 1. Magistrate Judge Duffy issued a report and recommended granting Rondeau's motion to suppress in part and denying it in part. Docket 105 at 54-55. Rondeau filed his objections to the report and recommendation. Docket 110. The government filed a response to Rondeau's objections shortly after.

Docket 113. After reviewing Magistrate Judge Duffy's report and recommendation, Rondeau's objections, and the factual record, this court issues the following order.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

When a party objects to factual findings by the magistrate judge, Article III of the United States Constitution and § 636(b)(1) require de novo review by the district court. *Branch v. Martin*, 886 F.2d 1043, 1045-46 (8th Cir. 1989). The district court may not rely solely on the report and recommendation in making this review. *Id.* at 1046. "In conducting de novo review, the district court must, at a minimum, listen to a tape recording or read a transcript of the

2

evidentiary hearing." *United States v. Harvey*, 38 Fed. Appx. 348, 350 (8th Cir. 2002) (cleaned up and citation omitted).

## FACTS

This court has reviewed a transcript of the evidentiary hearing in this case, all filed exhibits, and the comprehensive review of the facts included in Magistrate Judge Duffy's report and recommendation. *See* Docket 101; Docket 105. This court now provides the following summary of the relevant facts:

Rondeau's suppression motion concerns alleged defects in eight federal search warrants. Docket 85 at 14-19; Docket 105 at 8-9, 11-13. In particular, Rondeau takes issue with these warrants' alleged relationship to evidence obtained from a state search warrant that yielded evidence that this court has suppressed. Docket 85 at 3-7; Docket 56. That state search warrant was returned on October 24, 2022, and sought "any and all electronically stored data for the Apple ID(s) and iCloud account(s) associated with the iCloud account of [Rondeau's Yahoo email address]." Docket 89 at 1; Docket 105 at 5-8. When law enforcement applied for a warrant as part of the investigation into one alleged rape, Docket 56 at 5, 11, the search under this warrant led to their discovery of Rondeau's iCloud account's Directory Services Identifier (DSID) number, videos and photographs of minor females urinating, "age difficult pornography," additional videos of women urinating, videos of Rondeau showing off firearms, and a screenshot of a pin location where Rondeau allegedly filmed a minor victim urinating, Docket 105 at 8, 10-11.

3

The state iCloud warrant sought data "from the creation or opening of the Apple iCloud account . . . to the time that this warrant [was] executed." Docket 89 at 1. As it turned out, the "creation or opening" of this account was over ten years prior to the issuance of the warrant. Docket 45 at 47; Docket 56 at 12. The warrant also carried virtually no limiting provision on what sorts of electronic data law enforcement could seize, aside from what is mentioned in its caption: "[i]n the matter of *Rape* in Lincoln County, South Dakota." *See* Docket 89 at 10 (emphasis added); *see also* Docket 56 at 10-11. The breadth of this warrant proved to be problematic. On November 13, 2024, this court issued an order suppressing all evidence obtained from this iCloud search warrant. Docket 56 at 28. As this court held, "based on the officers' own understanding of the broad scope of the iCloud warrant . . . the iCloud warrant was 'so facially deficient' such that no executing officer could reasonably rely upon it because it authorized an exploratory, general rummaging of Rondeau's iCloud account." *Id.* at 27.

Rondeau now objects to eight federal warrants. Rondeau alleges that the evidence obtained under all of them is tainted by law enforcement's knowledge of the evidence obtained from the unconstitutionally overbroad state search. *See* Docket 85 at 7-8; Docket 110 at 4-21. These warrants—briefly described—are as follows:

1) Warrant 23-054-04 sought data on a blue iPhone and a green iPhone spanning from January 1, 2022 to February 13, 2023. Docket 89 at 136-39. The affidavit for this warrant relied on statements by two

4

interviewed minor victims and three videos of one of the victims found among Rondeau's iCloud account data pursuant to the suppressed state search warrant. *Id.* at 123-27. Law enforcement sought this warrant before suppression of evidence from the state iCloud warrant.

2) Warrant 23-109-04 sought data from a Dropbox account associated with the Yahoo email address law enforcement believed to belong to Rondeau, from May 1, 2022 to March 29, 2023. *Id.* at 156-60. This warrant was supported by arresting officers seeing the Dropbox app installed on Rondeau's cell phones when he was arrested on February 7, 2023, and following execution of the search warrant for his blue and green iPhones. *Id.* at 145-46. The warrant affidavit also cited statements from two of Rondeau's minor victims and images and videos found during the state search of Rondeau's iCloud account. Docket 89 at 143-45. Law enforcement sought this warrant before suppression of evidence from the state iCloud warrant.

3) Warrant 25-020-04 sought data associated with Rondeau's iCloud account from June 6, 2022 to June 30, 2022. *Id.* at 34-38. This warrant sought any fruit, evidence, or instrumentality of the crimes of transportation of a minor for sexual activity, child pornography, kidnapping, aggravated sexual assault, obstruction, destruction of evidence, and sex trafficking of children. *Id.* at 38. In pertinent part, it was supported by statements from Eastgate Towing owner Beth Ramm, who told law enforcement that Rondeau made statements

indicating he had an employee destroy his black iPhone and that he had sex with a girl who "had been hanging around [his] shop." *Id.* at 22-23. Law enforcement sought this warrant (and all following warrants) after suppression of evidence from the state search.

4) Warrant 25-026-04 sought data associated with a Snapchat account believed to belong to Rondeau between June 6, 2022 to June 20, 2022. *Id.* at 180-84. This warrant sought any information that constitutes fruits, evidence and instrumentalities pertaining to the possession of and distribution of child pornography images. *Id.* This warrant was supported by the same information supporting warrant 25-020-04, as well as new information, including pornographic images uncovered from the Dropbox and iCloud searches, and statements to law enforcement from people who knew Rondeau that Rondeau told them of his sexual exploits. *Id.* at 164-68.

5) Warrant 25-061-04 also sought data associated with Rondeau's iCloud account. *Id.* at 61-65. This warrant sought the same categories of information that have already been suppressed from the federal iCloud warrant, but it expanded the pertinent date range to cover a period from March 1, 2021 to January 19, 2023. *Id.* at 64-65. It was supported by the same information that supported the first federal iCloud warrant, but also included statements from people who attested to Rondeau's speaking about his sexual activity with minor females, and statements that he attempted to destroy his phone. *Id.* at

6

47-48. The affidavit also included reports from two other minor victims and discussed the discovery of child pornography found during execution of the Dropbox, federal iCloud, and first Snapchat warrants. *Id.* at 46-52.

6) Warrant 25-065-04 also sought data associated with Rondeau's Snapchat account. *Id.* at 211-15. This warrant sought the same information as the previous Snapchat warrant, but like the second federal iCloud warrant, it expanded the timeframe to cover a period from March 1, 2021 to January 19, 2023. *Id.* at 214-15. It was supported by the same information as the previous two warrants. *Id.* at 189-98.

7) Warrant 25-079-04 also sought Rondeau's iCloud data. *Id.* at 88-91. This warrant and the warrant affidavit were identical to the second federal iCloud warrant *See id.* at 67-91. Law enforcement sought this warrant because the data received pursuant to the second federal iCloud warrant was obtained 14 days outside the date range permitted by the warrant. Docket 101 at 56-57; Docket 89 at 79.

8) Warrant 25-134-04 sought the previously suppressed state extraction data obtained pursuant to the state iCloud warrant. Docket 89 at 118-21. This warrant was sought because the previous iCloud warrants were served after Rondeau had the opportunity to destroy his iCloud data post-execution of the state warrant. Docket 101 at 65-68; Docket 89 at 107-09. This warrant was supported by all the

information underpinning the previous seven federal warrants as well as several interviews with minor victims who claimed Rondeau engaged in various sexual or pornography-creating activities with them. Docket 89 at 96-109.

Magistrate Judge Duffy recommended denying Rondeau's motion to suppress information obtained under these warrants. Docket 105 at 54-55.[1] In his objections to her report and recommendation, Rondeau argues that contrary to Magistrate Judge Duffy's findings, the independent source doctrine does not salvage any of the findings of these allegedly confirmatory searches because law enforcement would not have sought them absent the suppressed findings from the state search. Docket 110 at 1-2. Even if they did, Rondeau argues that the warrants lack probable cause when all information obtained from the state iCloud search warrant is excised from law enforcement's basis for seeking the warrant. *Id.*; *see also United States v. Craig,* 630 F.3d 717, 721 (8th Cir. 2011) (laying out the general test for the applicability of the independent source doctrine). Rondeau also raises two factual objections and objects to Magistrate Judge Duffy's conclusion that the government did not exceed the scope of the warrants when executing them. Docket 110 at 2-3, 21.

---

[1] The one exception is images and videos of adult women urinating, which Magistrate Judge Duffy found to be outside the scope of a warrant seeking evidence concerning child pornography. Docket 105 at 54. Rondeau and the government do not object to this finding. Docket 110 at 1; *see* Docket 113. After a de novo review, the court adopts this portion of the report and recommendation.

## DISCUSSION

**I.      The Exclusionary Rule and the Independent Source Doctrine**

The burden of showing that the exclusionary rule applies is on the defendant who seeks to suppress evidence. *United States v. Phillips,* 540 F.2d 319, 326-27 (8th Cir. 1976). To meet that burden, the defendant must show, by a preponderance of the evidence, that the challenged warrants were issued without probable cause. *United States v. Houston,* 754 F. Supp. 2d 1059, 1071 (D.S.D. 2010). Once the defendant makes that initial showing, the burden shifts to the government to prove that an exception to the exclusionary rule applies. *See, e.g., United States v. Bady,* 2025 WL 2855719, at *10 (D.N.D. Aug. 8, 2025).

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The exclusionary rule deters violations of this right by "forbid[ding] the use of improperly obtained evidence at trial." *Herring v. United States,* 555 U.S. 135, 139 (2009). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " *United States v. Riesselman,* 646 F.3d 1072, 1078 (8th Cir. 2011) (internal quotation marks omitted); *see also United States v. Simpson,* 439 F.3d 490, 495 (8th Cir. 2006).

The pertinent exception to this rule is the independent source doctrine. "[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Utah v. Strieff,* 579 U.S. 232, 238 (2016). For the prosecution to successfully admit such evidence, they must show that (1) officers would have applied for a warrant had they not acquired the "tainted" information from the first unlawful search, and (2) the application affidavits must support probable cause after all of the tainted information has been excised from them. *Craig,* 630 F.3d at 721.

## II.   Rondeau's Factual Objections

Rondeau makes two factual objections. First, Rondeau objects to Magistrate Judge Duffy's finding that "MV1 sent the reporting party screenshots of messages Mr. Rondeau had sent her, including pictures of firearms." Docket 110 at 2-3 (quoting Docket 105 at 5). Second, Rondeau objects to Magistrate Judge Duffy's statement that "Rondeau did *not* seek to suppress evidence obtained form the blue and green iPhones warrant or the Dropbox warrant, even though those warrants were extant before the motion to suppress was filed." *Id.* at 3 (quoting Docket 105 at 10). Rondeau states that the Federal Public Defender's Office did not receive the discovery related to the blue and green iPhones warrant or the Dropbox warrant until January 27, 2025, six months after the first suppression hearing. *Id.*

The government filed a response to Rondeau's objections to the report and recommendation agreeing with these clarifications and indicating that it

does not resist either factual objection. Docket 113 at 1-3. Thus, this court sustains Rondeau's factual objections and modifies the report and recommendation to remove these two sentences.

### III.   Rondeau's Legal Objections

For all eight of the federal warrants, Rondeau argues that Magistrate Judge Duffy erred in concluding that the independent source doctrine applies. *See* Docket 110. Rondeau also objects to Magistrate Judge Duffy's conclusion that "the age-difficult porn, the GPS screenshot, and images of Rondeau masturbating should not be suppressed." *Id.* at 21. Rondeau also asserts that a fantasy story found during the search of his first federal iCloud warrant should be suppressed. *Id.* This court now considers each of these legal objections.

### A.   The Blue and Green iPhone Search Warrant

#### 1.   Would the Officers Have Applied for a Warrant Absent the Taint?

Rondeau objects to Magistrate Judge Duffy's "finding that officers would have sought warrants for the iPhones absent the tainted state search" because such a finding "is unsupported by the record and contradicted by the officers' contemporaneous conduct." Docket 110 at 4. Rondeau argues that Deputy Kirvin had no reasonable basis to seek this warrant. *Id.* at 4-5. Rondeau notes that despite Deputy Kirvin's extensive contemporaneous notes that were taken during his investigation, he made no records demonstrating that he planned to seek a warrant for these two iPhones and there was no testimony from Rondeau's alleged victims that sexually explicit videos of them were ever saved to Rondeau's phone. *Id.*

11

As Magistrate Judge Duffy noted in her report and recommendation, Deputy Kirvin testified during the evidentiary hearing that he would have sought search warrants for Rondeau's iPhone as a matter of course regardless of whether the state search warrant was granted. Docket 105 at 24; *see also* Docket 101 at 13. Magistrate Judge Duffy found this testimony to be persuasive.[2] And this court agrees with the officers' thought process; it is logical and predictable that the officers would have sought access to other iPhones in Rondeau's possession. As Special Agent Hohn[3] explained during the evidentiary hearing, when someone obtains new iPhones after using previous ones, it is standard to "download from the iCloud what was on the previous iPhone onto these new phones." Docket 101 at 95-96. Special Agent Hohn testified that based on his training and experience, "that's what people usually do" in child pornography cases involving iPhones. *Id.* at 96. Thus, it is fair to conclude that had the officers not obtained evidence from the later-suppressed state search, they surely would have sought data located on Rondeau's blue and green iPhones.

Rondeau's objections repeatedly note that Deputy Kirvin's notes and his actions taken contemporaneous with the investigation do not demonstrate any

---

[2] Because the suppression hearing was conducted before the Magistrate Judge, she carries the role of the trial court with respect to making findings of fact. Trial courts have a " 'distinct advantage' in evaluating witness credibility, and its credibility determinations are 'virtually unreviewable on appeal.' " *United States v. Ford*, 888 F.3d 922, 927 (8th Cir. 2018) (quoting *United States v. Vinton*, 631 F.3d 476, 481 (8th Cir. 2011)).

[3] Special Agent Hohn also provided an affidavit in support of the search warrant for the blue and green iPhones. Docket 89 at 123.

recorded intention to seek the iPhones' data, nor did he take any steps to preserve the information on them ahead of a later search. Docket 110 at 4-5. But there is no "contemporaneous effort" requirement in Eighth Circuit case law applying the independent source doctrine, and it is not an affront to the doctrine that the officers decided not to pursue a federal warrant until after the state search warrant had run its course. *See* Docket 101 at 18-21 (recording Deputy Kirvin's testimony that he spoke to the Lincoln County sheriff's office about evidence concerning the phones); *see also* Docket 90. Contrary to Rondeau's interpretation, this evidence demonstrates that the officers would have sought a warrant for the blue and green iPhones' data if they did not think it would already have been obtained under the state search. Thus, this court agrees with Magistrate Judge Duffy that the first prong of the independent source doctrine is satisfied.

### 2.    Was there Probable Cause Independent of the Taint?

Rondeau objects to Magistrate Judge Duffy's finding that the warrant to search the blue and green iPhones was supported by sufficient probable cause absent the information obtained from the state search warrant. Docket 110 at 6-8. Rondeau alleges that there is no connection between statements from the minor victims and Rondeau's use of these specifically colored iPhones. *Id.* at 7. He also argues the warrant's timeframe was overbroad. *Id.*

The probable cause standard in the suppression context requires only that the magistrate judge make a "practical, common-sense decision" as to whether an affidavit supports a "fair probability that contraband or evidence of

a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (citation omitted).

This court concludes that probable cause remains in the application for the blue and green iPhones warrant after all taint from the state search warrant has been excised. One of Rondeau's minor victims personally reported being recorded with an iPhone, and the guardian of another minor victim reported that the victim was also recorded with an iPhone. Docket 89 at 125. Rondeau's blue iPhone and green iPhone were found on his person when he was arrested. *Id.* at 127. Even if the victims did not describe seeing the blue and green iPhones, a minor victim and a minor victim's guardian both stated that the victims were recorded with *an* iPhone. *Id.* at 125. It is a simple reality of the digital age that information on different Apple devices belonging to one person is probably linked by common use of iCloud storage. And Special Agent Hohn testified that, in his professional experience, "individuals involved in possessing, producing, [or] collecting child pornography will often store their material in online storage." Docket 101 at 39. This is certainly enough to find a "fair probability" that further evidence or contraband would be found on any iPhone used by Rondeau. Thus, this court agrees with Magistrate Judge Duffy's conclusion that there was sufficient untainted probable cause supporting this warrant. This court overrules Rondeau's objections regarding the blue and

14

green iPhones warrant and declines to suppress evidence obtained from the warrant.

### B.    The Dropbox Account Warrant

#### 1.    Would the Officers Have Applied for a Warrant Absent the Taint?

Rondeau next objects to Magistrate Judge Duffy's conclusion that the independent source doctrine salvages the Dropbox search warrant. Docket 110 at 8. Like with the iPhones warrant, Rondeau argues that Deputy Kirvin and Special Agent Hohn's notes and actions during their investigation do not reflect an intention to eventually seek a warrant for Rondeau's Dropbox account. *Id.*

But Rondeau's objections do not address that the Dropbox warrant application had the benefit of information obtained from the searches of Rondeau's iPhones, including the presence of the Dropbox application on one of Rondeau's phones. Docket 89 at 146. Special Agent Hohn testified during the evidentiary hearing that "people that are involved in child pornography will often use online accounts like Dropbox and Mega." Docket 101 at 99. He also testified that he would have sought a warrant for Dropbox information regardless of what he learned from the state search. *Id.* at 99-100. Thus, this court finds that law enforcement would have sought this warrant even absent their knowledge of the findings from the state search.

#### 2.    Was there Probable Cause Independent of the Taint?

Rondeau also objects to Magistrate Judge Duffy's finding that probable cause existed independent of the suppressed material. Docket 110 at 9. He argues that law enforcement's conclusion that the presence of Dropbox on

15

Rondeau's account indicates storage of child pornography is a mere generalization based on the agents' experience, not a factual nexus. *Id.* Again, by this point, law enforcement had statements from a minor victim that Rondeau filmed himself sexually assaulting them and knew that the Dropbox application—the purpose of which is to securely store files in a cloud for access from multiple devices—was installed on his multiple iPhones. Docket 89 at 144, 146. Officers also understood by this point that Rondeau possessed multiple smart devices and would likely have used whatever means were available to facilitate data sharing between them. *See id.* at 146, 150-52. This is not a broad generalization, but a nexus of facts with a "cumulative meaning" demonstrating a fair probability that Rondeau's recordings of his minor victims existed, and were stored in Rondeau's Dropbox account. *See United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). Thus, this court agrees with Magistrate Judge Duffy and denies Rondeau's motion to suppress the Dropbox warrant.

### C.    The First Federal iCloud Warrant

#### 1.    The Role of the DSID Number

Rondeau next objects to Magistrate Judge Duffy's conclusions that the federal iCloud warrants "were untainted because the affidavits did not list a Digital Serial Identifier ("DSID") and because SA Hohn testified that he was personally unaware of the DSID until discovery." Docket 110 at 9. Rondeau argues that this affidavit "[t]argeted the same iCloud account, relied on the same phone number, and covered overlapping time periods already

encompassed by the suppressed state warrant." *Id.* at 10. Because officers knew they were targeting the same account and attempting to reacquire suppressed digital evidence, Rondeau maintains that the officers were merely relabeling the fruits of a tainted search to disguise the lack of an independent source for the warrant. *Id.* at 10-11.

This court disagrees. While the suppressed search did target this same material, the Supreme Court has affirmed that the independent source doctrine applies "to evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the illegal activity." *Murray v. United States*, 487 U.S. 533, 537 (1988). Similar to the warrant for Rondeau's blue and green iPhones, law enforcement included testimony in their affidavits from multiple minor victims alleging that Rondeau filmed his assaults of them. Docket 89 at 21-24. ICloud—Apple's proprietary cloud storage service—is arguably the most likely place where these recordings would be found. By this point in law enforcement's investigation, law enforcement also had been told by Beth Ramm that Rondeau bragged about how one of Rondeau's "guys" microwaved his black iPhone. *Id.* at 23. The logical next place to look for the information Rondeau intended to destroy would be in the cloud storage associated with that iPhone. None of these inferences by law enforcement required knowledge of Rondeau's DSID number. Thus, this court disagrees with Rondeau's objection that the warrant application for Rondeau's iCloud account merely relabels tainted evidence.

17

### 2. Would the Officers Have Applied for a Warrant Absent the Taint?

As with the other warrants, Rondeau also objects that "the record does not support a finding that the warrants would have been sought independently," requiring suppression. Docket 110 at 12. Rondeau does not advance new arguments that the record demonstrates a lack of an intention to seek a warrant here. *Id.* at 12-15. Thus, this court agrees with Magistrate Judge Duffy's finding that the testimony of Special Agent Hohn and Deputy Kirvin that they would have applied for the search warrant is credible. *See* Docket 105 at 34. This court concludes that these officers would have sought a search warrant absent the information discovered from the state search.

### 3. Was there Probable Cause Independent of the Taint?

Rondeau next argues that the officers did not have an independent source of probable cause, but rather "willful[ly] disregard[ed] . . . suppressed knowledge" and "pretend[ed] they do not know what they unlawfully learned." Docket 110 at 13. This argument is similar to Rondeau's objection concerning the DSID number and fails for similar reasons. Specifically, Rondeau takes issue with a supporting affidavit's assertion that "Rondeau recorded MV2 while she was urinating" because law enforcement only knew of this video due to the state search warrant, and law enforcement's inference that allegations of Rondeau's microwaving a black iPhone created probable cause that there would be evidence on that iPhone's associated iCloud storage. *Id.* at 13-14. Rondeau also challenges the affidavit's reliance on second-hand statements

18

from a minor victim's guardian that Rondeau filmed the minor victim urinating, without corroborating that fact with the victim herself. *Id.* at 14.

This court finds these arguments unpersuasive. First, the officers did not need to see the urination video to know that there was a fair probability that it existed. Otherwise, no probable cause would suffice to permit officers to search for something they have not already seen. As Magistrate Judge Duffy explains, one of Rondeau's minor victims told police that Rondeau filmed her urinating. *See* Docket 105 at 35. Rondeau argues that this "does not independently point to iCloud," Docket 110 at 14, but as this court has discussed, the presence of any media on a person's iPhone storage suggests a strong possibility of its presence on an associated iCloud account. The court also does not agree with Rondeau's objection that a statement from a minor victim's guardian cannot contribute to probable cause. That statement, in combination with direct statements to police from another minor victim and statements from Beth Ramm that Rondeau was receiving nude pictures from minors, more than suffices. Docket 89 at 21-24. Similarly, the allegations that Rondeau microwaved an iPhone—combined with victims' and witnesses' allegations about what that iPhone was used to do—indicated a fair probability that Rondeau microwaved the iPhone with the intent to destroy evidence. If the iPhone contained such evidence, its associated iCloud account likely did as well. Thus, this court overrules Rondeau's objection and concludes that the first federal iCloud warrant was supported by ample probable cause.

### D.    Snapchat Warrants

Rondeau objects to Magistrate Judge Duffy's findings regarding the Snapchat warrants and argues both warrants lack probable cause. Docket 110 at 20. For the first prong of the independent source doctrine analysis, Rondeau objects that both Snapchat warrants are "founded entirely on the same facts underlying Warrant 25-020-04" and do not cite statements from victims that any nude images sent to Rondeau were actually saved to his phone. *Id.* at 20-21. Rondeau further argues that the Snapchat warrants' reliance on the same factual bases as the federal iCloud warrants means that the Snapchat warrants are similarly tainted. *Id.* at 20-21.

This court agrees with Magistrate Judge Duffy that probable cause existed to believe that evidence of a crime would be found in Rondeau's Snapchat data. As Magistrate Judge Duffy explains, "Snapchat, despite erasing messages, contains a record of who sent Snapchats to whom. Couple that with MV2's statement that she was friends with Mr. Rondeau on Snapchat and Snapchat's subpoena information confirming he had an account associated with his phone number," there remains a fair probability that evidence pertaining to child pornography would remain in Rondeau's Snapchat data. Docket 105 at 38. This information is entirely untainted by the fruits of the state search. *See* Docket 89 at 164-68, 189-98. And taken in tandem with multiple minor victims' allegations that Rondeau filmed his sexual assaults of them, this information suffices to establish a fair probability that Snapchat contained evidence of Rondeau possessing or distributing child pornography.

Rondeau also objects to Magistrate Judge Duffy's finding that Rondeau's victims' allegations of Rondeau requesting nude photographs on specific dates merits the second Snapchat warrant's expanded timeframe. Docket 110 at 21; *see also* Docket 105 at 47. Rondeau notes that Snapchat automatically deletes sent messages, and neither victim alleged that the images were saved. Docket 110 at 21. But as Special Agent Hohn explained during the evidentiary hearing, Snapchat's automatic deletion feature can be easily bypassed. *See* Docket 101 at 68-70. A person may take a screenshot on his phone, take a photograph using another device, or employ a third-party screen recording software to get around the feature. *Id.* Thus, Snapchat's automatic deletion feature does little to diminish the probable cause created by Rondeau having added the same minor victims on Snapchat whom he allegedly filmed himself assaulting. For the same reason, this court disagrees with Rondeau's arguments that the alleged timing of his requests for nude photographs from his victims cannot establish an expanded timeline for the second Snapchat warrant. *See* Docket 110 at 21. Thus, this court overrules Rondeau's objections regarding the two Snapchat warrants.

### E.     The Second and Third iCloud Warrant

#### 1.     Would the Officers have Applied for the Warrants Absent the Taint?

For the second and third federal iCloud warrants, Rondeau argues that "[b]ecause the decision to seek warrants 25-061-04 and 25-079-04 was driven by law enforcement's prior exposure to suppressed and derivative iCloud data, the government failed to establish the first prong of the independent source

doctrine." *Id.* at 16. Rondeau alleges that these "expanded iCloud warrants were sought only after agents reviewed data obtained pursuant to warrant 25-020-04, Dropbox, Snapchat, and NCMEC,[4] all of which themselves trace directly back to the suppressed state iCloud search." *Id.* This court has already determined that the first federal iCloud warrant, Dropbox warrant, and Snapchat warrants were not tainted by information gathered from the suppressed state warrant. *See Houston*, 754 F. Supp. 2d at 1071 (explaining that "the burden of proof is on the defendant who seeks to suppress evidence"). Thus, it was appropriate for officers to rely on information gathered from them here.

### 2.    Was there Probable Cause Independent of the Taint?

Rondeau next objects that even if the affidavits for the second iCloud warrant were untainted, probable cause still fails because the minor victims' allegations do not indicate a fair probability that child pornography existed on the iCloud account during the expanded timeframes of these warrants. Docket 110 at 16-17. For the second iCloud warrant, Rondeau argues that while the "allegations tied to earlier dates (2021—early 2022) involve Snapchat communications," they do not specifically point to iCloud storage as a place where child pornography was likely to be found. *Id.* at 17.

---

[4] NCMEC is the National Center for Missing and Exploited Children. Special Agent Hohn obtained a report confirming that files found during the state search were part of a "known series of child pornography." Docket 101 at 49. The images submitted to NCMEC were found in the untainted Dropbox warrant. Docket 89 at 196.

This court finds this argument unpersuasive. Even assuming that all exchanges of nude photographs from 2021 to early 2022 occurred over Snapchat, many of the methods of bypassing Snapchat's automatic deletion feature—e.g., a third party recording application or screenshots—would result in media being saved to an iPhone's local and cloud storage, not only in Snapchat's own data. *See supra* part III.D (discussing methods of bypassing Snapchat's automatic deletion feature); *see also* Docket 101 at 68-70. And these Snapchat communications constitute only a fraction of the probable cause supporting these warrants. Beth Ramm also alleged that Rondeau told her he was having sex with underage girls and receiving nude pictures from them. Docket 89 at 44-45. This court agrees with Magistrate Judge Duffy that this nexus of information establishes probable cause that evidence pertaining to child pornography was likely to be found during the second iCloud warrant's expanded timeframe.

This court similarly declines to suppress evidence obtained from the third iCloud warrant. Rondeau describes it as a "replacement warrant" that fails to cure the constitutional deficiencies of the second iCloud warrant. Docket 110 at 17. This court has already determined that the second iCloud warrant had no constitutional deficiencies, so none are carried over to the third. Thus, this court overrules Rondeau's objections as to the second and third federal iCloud warrants.

**F.      The Lincoln County Data Warrant**

**1.      Would the Officers have Applied for the Warrants Absent the Taint?**

Rondeau next objects to Magistrate Judge Duffy's conclusion that Warrant 25-134-04 was properly granted because "it expressly seeks to search and rely upon the previously suppressed iCloud extraction held by the LCSO." Docket 110 at 18. Again, Rondeau takes issue with Deputy Kirvin's "post hoc assertions" that he intended to seek an iCloud warrant despite the "record contain[ing] no contemporaneous evidence, no reports, communications, or warrant applications, showing that Dep. Kirvin intended to seek an iCloud warrant independent of the unlawful state search." *Id.* at 18-19.

This court again rejects Rondeau's implicit assertion that the government must demonstrate contemporaneous intent to obtain information it seeks under the independent source doctrine. *See id.* Magistrate Judge Duffy heard Deputy Kirvin's testimony that if Lincoln County officers had not applied for a search warrant for Rondeau's iCloud data, Deputy Kirvin would have sought one sooner himself. Docket 101 at 12; Docket 105 at 50-51 (summarizing Deputy Kirvin's testimony and stating that the court found it credible). And while it is true that this warrant explicitly sought previously suppressed information, this was because Rondeau's deletion of his iCloud data made the Lincoln County cache the only place where the legitimately sought iCloud data could still be found. *See* Docket 89 at 107-09. If the data on Rondeau's iCloud account had not been deleted, Magistrate Judge Duffy concludes that officers likely would have found it there. Docket 105 at 51. This court agrees that this

24

justified searching Lincoln County's cache. Rondeau does not address the necessity of targeting the Lincoln County cache for the deleted data in his objections. *See* Docket 110 at 18-20. Thus, this court agrees with Magistrate Judge Duffy's conclusion that the government has satisfied the first prong of the independent source doctrine.

**2.    Was there Probable Cause Independent of the Taint?**

Rondeau also objects to the admission of evidence recovered under this warrant on the issue of probable cause. Docket 110 at 19. Rondeau again argues that a search explicitly targeting previously suppressed information cannot be free of taint, and that the government's reliance on statements from alleged victims and witnesses to Rondeau's requests for nude images are not sufficient to establish probable cause that incriminating images or videos existed in Rondeau's iCloud data. *Id.*

Again, law enforcement sought Lincoln County's information because Rondeau's deletion of his iCloud data rendered it the *only* place where that legitimately sought data could still be found. *See supra* part III.F.1. The nexus of facts supporting probable cause in this iCloud warrant is strong. The supporting affidavit cites statements from multiple minor victims that Rondeau recorded his assaults and multiple statements that he requested nude photographs from his victims via Snapchat. Docket 89 at 96-107. Rondeau argues that Snapchat media is "ephemeral" and "[t]hese statements do not demonstrate that any images or recordings were stored in iCloud." Docket 110 at 19. But as explained previously, Special Agent Hohn's experience is that

media sent over Snapchat can be recorded and saved to the iCloud. *See* Docket 101 at 68-70. And it is his experience that individuals interested in child pornography tend to hold onto their catalog of child pornography. *See id.* at 109-10. As Apple's proprietary cloud storage service, iCloud is a logical place to look for that media. Taken together, these facts establish probable cause that evidence of child pornography would be found within Lincoln County's cache of Rondeau's iCloud data. Thus, this court overrules Rondeau's objection regarding the federal Lincoln County iCloud data warrant.

### G.    Did Officers Exceed the Scope of the Warrants?

Rondeau raises several objections to Magistrate Judge Duffy's conclusion that law enforcement did not exceed the scope of the federal warrants. Docket 110 at 21-22. To determine if officers have exceeded the scope of a warrant, the Eighth Circuit instructs that courts should "look to the fair meaning of the warrant's terms." *United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021) (citation omitted). Thus, this court will compare each item of objected-to evidence against the fair meaning of the language in its associated warrant.

#### 1.    Videos of Adult Women

Rondeau first mentions the seizure of videos of adult women urinating. Docket 110 at 21. Here, the applicable warrants authorized a search for evidence "pertaining to the possession and distribution of child pornography images." *See, e.g.,* Docket 89 at 121. On this item, Rondeau agrees with Magistrate Judge Duffy's conclusion that videos of adult women urinating lie

26

outside of the scope of a warrant targeting child pornography. Docket 105 at 54. Thus, this court also agrees that this evidence should be suppressed.

### 2.    Age-difficult Pornography

Next, Rondeau objects that age difficult pornography obtained under the federal search warrants should be suppressed because "there is no definitive evidence that it does include a minor." Docket 110 at 22. This court agrees with Magistrate Judge Duffy that material that *might* be child pornography falls within the warrant's umbrella of "concerning .  . . child pornography." Docket 105 at 53; Docket 89 at 37-38, 64-65, 90-91, 120-21, 139-40, 159-60, 183-84, 214-15. Thus, this court disagrees with Rondeau that images of age-difficult pornography lie outside the scope of the warrant, and overrules his objection.

### 3.    GPS Screenshot

Next, Rondeau objects to the seizure of a GPS screenshot of the location where he allegedly assaulted one of his minor victims. Docket 110 at 21; *see also* Docket 105 at 54. Rondeau argues that the GPS screenshot exceeded the scope of the warrant because it is not child pornography. Docket 85 at 23. This court finds Magistrate Judge Duffy's conclusion persuasive that the screenshot is relevant because it concerns one of Rondeau's alleged assaults[5] and may corroborate details of the victim's testimony. *See* Docket 105 at 54. Thus, this court overrules Rondeau's objection regarding the GPS screenshot.

---

[5] As previously discussed, Rondeau's minor victims have alleged that Rondeau filmed himself assaulting them. *See, e.g.,* Docket 89 at 96-97, 165.

#### 4.    Images and Videos of Rondeau Masturbating

Next, Rondeau objects to Magistrate Judge Duffy's conclusion that images and videos of Rondeau masturbating should not be suppressed. Docket 110 at 21. Rondeau argues that "there is no nexus that the images and videos located by SA Hohn were in fact sent to anyone," and "[m]ere presence of these images and videos on Rondeau's iCloud does not establish that they were in fact sent to anyone." *Id.* at 22. This assertion plainly contradicts the factual record. *See* Docket 89 at 101-02, 107, 195 (noting allegations by multiple minor victims that Rondeau sent them pictures of his penis). That testimony, combined with Special Agent Hohn's experience that male child pornographers often send pictures of their penises to try and elicit nude pictures from their victims in return, *see* Docket 101 at 42, suffices to bring the pictures of Rondeau's penis and videos of him masturbating within the scope of the warrants seeking evidence of crimes concerning child pornography. Thus, this court overrules Rondeau's objections regarding the pictures of his penis.

#### 5.    Fantasy Story

Rondeau also asserts that a fantasy story Special Agent Hohn found in his review of the data from the first federal iCloud warrant should be suppressed. Docket 110 at 21. Magistrate Judge Duffy's report and recommendation does not make any recommendation pertaining to this story. *See generally* Docket 105. This story is apparently an erotic narrative about "watching a girl pee." *See* Docket 101 at 51. A written story about watching a girl pee does not fall under the scope of the warrants because it is not evidence

28

of possession, receipt, distribution, or production of child pornography; kidnapping; aggravated sexual assault; sex trafficking of children; transportation of a minor for sexual activity; obstruction; or destruction of evidence. Thus, evidence of the fantasy story is suppressed.

## CONCLUSION

For the reasons explained above, it is

ORDERED that the Report and Recommendation (Docket 105) denying in part and granting in part Rondeau's motion to suppress is adopted as modified by this opinion. It is

FURTHER ORDERED that Rondeau's objections (Docket 110) are sustained in part and overruled in part. It is

FURTHER ORDERED that Rondeau's motion to suppress (Docket 84) is DENIED in part and GRANTED in part. Evidence of Rondeau's chats with adult women, images of adult women urinating, and the fantasy story about a girl peeing are suppressed.

Dated April 15, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE